MATILDA G. EDMONDSON, by, etc., *vs.* LETITIA J. HARRIS and others.

October Term, 1875.

PROBATE OF DEED OF FEME COVERT GOOD ALTHOUGH THE WORD RESTRAINT BE USED INSTEAD OF CONSTRAINT.—A probate of the deed of a married woman is good, where the certificate of privy examination follows the form prescribed by the statute, except that the word "restraint" is used instead of "constraint."

TRUSTEE—SUMMARY APPOINTMENT OF NEW TRUSTEE WHERE THE ORIGINAL TRUSTEE REFUSES TO ACT.—*Semble*, an appointment by the county court of a new trustee, where the original trustee in open court refuses to act, made upon the application of the principal beneficiary in an assignment for creditors, is good, without notice to the maker of the assignment, although the deed provides that the surplus proceeds, after satisfying the purposes of the trust, shall be paid to the maker.

*A. G. Merrit*, for complainant.
*Ed. Baxter*, for defendants.

THE CHANCELLOR :—Bill filed by a married woman, by next friend, to set aside a sale of land, originally belonging to her, made under a deed of trust executed by her husband

and herself, and, if this cannot be done, for certain credits on the trust debt. Her right to the latter relief, to the extent of credits shown, is conceded. The only questions submitted to the court arise on the first branch of the case.

The facts are that John K. Edmondson, the husband of the complainant, was elected sheriff of Davidson county, and as such gave two bonds, with good personal security, for the faithful performance of his duties, one in the penalty of $40,000, the other in the penalty of $5,000. To indemnify his sureties, he and the complainant, his wife, on the 11th of April, 1856, conveyed the house and lot in controversy to James A. McMurry and George Maney, two of the sureties, in trust for the indemnity of all of the said sureties, with power to sell, if necessary, the terms of sale being left to the discretion of the trustees, and apply the proceeds of sale to the expenses and purposes of the trust. Then follows this clause : " And if the liabilities of the said sureties, thus incurred, should not require the whole of the proceeds of sale to indemnify and save them from loss, the residue of the proceeds of such sale, after paying the expenses appertaining to the execution of this trust, shall be paid to the said Matilda G. Edmondson." The sureties of Edmondson on his official bond, who are secured in said deed by name, are six in number, the trustees being two of them.

On the 5th of January, 1859, Edmondson and wife, the two trustees in the previous deed, and W. J. Phillips, another of these sureties, join in a conveyance of the same house and lot to James Bankhead, in trust, to secure one B. D. Harris from liability as endorser upon a note of John K. Edmondson for $4,000, executed for the purpose of raising money to indemnify his official sureties to that extent. The deed recites on its face that all the official sureties join in its execution, but only the three above named do actually execute it with Edmondson and wife. In this same deed John K. Edmondson also conveys to James Bankhead, in like trust, two slaves, and two promissory

notes for $350 each. Bankhead, as trustee, is authorized,. if it becomes necessary to the indemnity of Harris, to sell. the property conveyed, for cash, the house and lot free from the equity of redemption. If any proceeds of the sale should be left, after paying charges and indemnifying· Harris, the deed directs them to be paid over to the sureties. on Edmondson's official bond, "if they demand the same," and if not, "to the said John K. Edmondson." But it is. also provided that "this deed of trust is not intended to· interfere with the said first deed of trust, only so far as to· give this one the preference, and to have the said Harris paid first, provided he should have to pay the said note of" $4,000."

James Bankhead declined to accept the trust of this last. deed, and on the 5th of June, 1865, a proceeding was had. in the county court of Davidson county for the appointment, of another trustee, the validity of which is one of the ques- tions submitted. The certified copy of the proceedings. shows that on that day the county court met, pursuant to adjournment; present, the Hon. James Whitworth, judge. Then follows an entry headed: "In the matter of the trus- teeship of J. K. Edmondson." The entry recites that James. Bankhead came into court and produced the deed last above; mentioned, describing it by the names of the makers, date, date of registration, and book and page where registered, and refused to take the oath or give the bond required of trustees by the Code, § 1974. "And thereupon," the entry says, "Letitia J. Harris, the administratrix of B. D. Harris, deceased, who is the principal beneficiary interested in said deed of trust, appeared and made application to have Nathaniel Baxter, Esq., appointed trustee in the room of the said James Bankhead, which was done." The entry further recites that thereupon said Baxter came into court, accepted the trust, gave bond, and qualified as prescribed by the Code, § 1974.

Afterwards, on the 15th of July, 1865, Nathaniel Baxter,. under the foregoing appointment, sold the house and lot in.

controversy, when the same was bid off by Anna R. Harris nominally, but in reality by Letitia J. Harris, her mother, by whom the purchase money was paid.

The facts being as above recited, the counsel of the complainant makes two points, which have been argued and submitted.

1st. The first is that the deeds of trust mentioned are both void as to complainant, because the certificate of her privy examination is not in compliance with the statutory form.

2d. That, if this be not so, the proceeding for the appointment of the new trustee was void, and the subsequent sale by the said trustee void, also, in consequence thereof.

The first of these points turns entirely upon the use, in the clerk's certificate, of the word "restraint," instead of the word "constraint," and the argument rests partly upon the difference in meaning of these two words, and partly upon the necessity of rigidly adhering to the statutory form, citing *Henderson* v. *Rice*, 1 Coldw. 223, and *Laird* v. *Scott*, 5 Heisk. 350.

It is, undoubtedly, the settled law of this state that the common law disabilities of a married woman exist in full force except when otherwise provided by statute, and, as a consequence, she cannot dispose of her real estate except by adopting the precise means allowed by the statute law. *Gillespie* v. *Worford*, 2 Coldw. 632; *Cope* v. *Meek*, 3 Head. 387; *Mount* v. *Kesterson*, 6 Coldw. 452; *Moseby* v. *Partee*, 5 Heisk. 26. Accordingly it has been held, in *Henderson* v. *Rice*, that any material departure from the form of certificate prescribed by the statute will avoid the deed. Following in the same direction, it was strongly intimated, in *Laird* v. *Scott*, that the omission of one of the words included in the form, although it may be difficult to see the distinction between it and another word also used, would equally avoid the deed. The question raised in this case goes a step further, and is whether the result will be the same if, in lieu of an omitted word, another word or

phrase having the same meaning is used. As, for example, if, instead of the word "voluntarily," the clerk should substitute "of her own will." The further objection is made that "restraint" is not synonymous with "constraint."

The certificate of privy examination of a married woman to a deed of her land is prescribed by the Code, § 2076, in the following words: "And ———, wife of the said ———, having appeared before me, privately and apart from her husband, acknowledged the execution of the said deed to have been done by her freely, voluntarily, and understandingly, without compulsion or constraint from her said husband, and for the purposes therein expressed." This certificate was taken from the act of 1833, ch. 92, § 1, which act was in force from its passage until the adoption of the Code, and is *in hæc verba*, except that the word "constraint" is substituted for "restraint," the word of the original act. By the 2d section of the act of 1833 the form of certificate is repeated where the privy examination is taken by a commission, and in this form the words "and understandingly" are, manifestly by clerical misprision, omitted. This omission is supplied in the corresponding form given by the Code, § 2078.

By the Code, § 2080, the unintentional omission, by the clerk, of any words in a certificate of acknowledgment or probate shall in nowise vitiate the validity of the instrument, "if the substance of the authentication required by law is in said certificate." By § 2081 an omission in substance may, on application of either party, be corrected by the clerk. And by § 2082 the clerk may also correct the omission of "any words" in the certificate of the privy examination of a married woman by him taken, upon his making oath, "in open court, to the truth of such correction."

It is urged in argument by the complainant's counsel that § 2080 does not apply to "the certificate of a privy examination" of a married woman, because such certificate is not "a certificate of an acknowledgment or pro-

bate," within the meaning of that section. And the history of that provision gives some countenance to the position. For it is borrowed from the act of 1846, ch. 77, which only provides for supplying omissions in the acknowledgment or probate of any instrument as required by the 2d and 3d sections of the act of 1831, ch. 90, which act contains no provision for the privy examination of a married woman. *That* was provided for by the act of 1833, ch. 92, already mentioned. It is further strengthened by the difference in the wording of §§ 2081 and 2082, the first providing for the omission of matter of substance in acknowledgments and probates, the other for the omission of " any words " in the certificate of privy examination. Nevertheless, I am inclined to think that § 2080 was intended to apply to all certificates of acknowledgment or probate. But the provisions of the Code and the rulings of the court draw a distinction between what is matter of substance in the certificate of ordinary probates and in the certificate of the privy examination of a married woman. The omission of a word having the same meaning as that of a word retained might not be matter of substance in the one case, while it probably would be in the other. The question comes back, therefore, in the present case, to this : Is the omission of the word " constraint," and the supplying its place by the word " restraint," in the certificate of privy examination, matter of substance? It may be conceded, at the outset, that the omission of the word altogether would, so far as this court is concerned, be treated as fatal, under the intimation given by the supreme court in *Laird* v. *Scott,* 5 Heisk. 350. The question is, consequently, narrowed down to this : Is the word " restraint " the same word in substance as " constraint," the word prescribed by the form.

Upon this narrow point we start out with the significant fact that for twenty-five years, a quarter of a century, the word was " restraint," not " constraint." The latter word was probably inserted by the revisers of the Code, or by

the eminent reviser to whom that part of the Code, the title, Registration—as the presiding Chancellor knows personally —fell in the division of labor between them, namely, R. J. Meigs, Esq., one of the able and accurate lawyers of which our state is justly proud. He was a classical scholar, whose ear was attuned to nicety of expression and euphony of words. We owe the change, doubtless, to his sense of the fitness of things. Was the change anything more than one of sound, not sense?

Both words come to us from the Latin, through the French. In Latin, *constringo* and *restringo* mean the same thing—to bind ; *constringo*, to bind with—that is, together ; *restringo*, to bind again—that is, tightly. Any Latin dictionary will show us that one translation given to both is "to restrain." In classical and legal terminology this sense seems to be the favorite one for *constringo*. Thus, Cicero uses it in two of his noted phrases : " *Constringere orbem novis legibus,*" and " *constringere fraudem supplicio.*" Any English and French dictionary will show us that the English words "constraint" and "restraint" are translated into French by *contrainte*, and, *e converso*, the latter word has the meaning of both the English words given to it. One of the meanings which both Sheridan and Johnson give to the verb constrain is, to restrain. And all of our lexicographers give as one of the meanings of the noun restraint, an abridgment of liberty or hindrance of the will. It is in this sense that it was used in the form of certificate of 1833, and, in that view, is perhaps more appropriate than constraint, which, except we give it the sense of restraint, is identical in meaning with the word " compulsion," with which it is connected.

The meaning of the two words, at one time identical, has been so differentiated by usage of the best writers as now to convey, when correctly used, distinct ideas. But, as elements of the vulgar tongue, they are still so nearly alike as to be applied without discrimination to the same purpose. To say that an act is done without constraint, or without restraint, would convey the same meaning, namely, without

28

any "abridgment of liberty or hindrance of the will," which is one of the recognized definitions of restraint. I am of opinion, therefore, that, while the words are different, the sense is one, and that the certificate is valid.

The other point made turns upon the validity of the proceeding in the county court appointing the new trustee; for, if the appointment was invalid, it is clear the sale made by him was void. *Sherrill* v. *Goodrum*, 3 Humph. 430. The entry shows that only James Bankhead and Letitia J. Harris were present, in person or by counsel, on the occasion, or were parties to the record. The question, therefore, is this: Can a new trustee be legally appointed, where the original trustee refuses to act, at the instance of the principal beneficiary, without notice to the makers of the trust deed, or other beneficiaries, if any? The facts, it will be remembered, are that the complainant had joined her husband in the first conveyance in trust to secure his sureties as sheriff. This deed expressly provides that the surplus proceeds of any sale under the trust, after satisfying the purposes of the trust, shall be paid to complainant. This makes her clearly a beneficiary under this deed of trust. The second deed conveys the same land for the purpose of giving Harris a preference. It also includes two slaves and two notes, the property of John K. Edmondson, the husband. This deed expressly recites that it is not intended to interfere with the first deed, except to give the preference to the Harris debt. It also provides that any surplus of sale shall be paid to the sureties secured by the. trust deed, if they demand it, and if not, to John K. Edmondson. This provision makes these sureties and Edmondson beneficiaries. But the clause of non-interference with the previous deed, except to the extent necessary to secure Harris, secures, also, the complainant's right to the surplus under the first deed. The provision directing the surplus under this deed to be paid to the husband was meant, doubtless, to apply to the surplus proceeds of the sale of his property conveyed in the deed. In this view the rights of the wife to the surplus of her

separate estate, secured by the first deed, are not affected by this clause. Both provisions may well stand together. And, to exclude the wife's right to the surplus, the intention on the face of the instrument ought to be clear, although it seems that such intention may be collected from the limitations. *Jackson* v. *Innes*, 1 Bli. 104, overruling Lord Eldon, in *s. c.*, 16 Ves. 356, who thought that there ought to be something more upon the face of the deed to lead the wife to understand the limitations. The complainant is, therefore, a beneficiary to the extent of the surplus of her land.

The Code, § 1974, requires a trustee under a trust conveyance for the benefit of creditors, before entering upon the discharge of his duties, to give bond and take an oath prescribed. By § 1977 it is provided that, if a trustee fail or refuse to comply with these provisions, the county court, upon the application of any person interested, shall, in the room of the delinquent, appoint a trustee or receiver, who, upon executing the bond and taking the oath aforesaid, may execute the said trust or assignment.

It is now well settled in this state that these provisions as to the qualification of trustees are directory, for the protection of the beneficiaries, and failure to comply with them will not prevent the vesting in the trustee of the trust property, nor affect his power to convey a good title to a purchaser of the trust property if he act without qualification. *Mills* v. *Haines*, 3 Head, 335; *Vance* v. *Smith*, 2 Heisk. 343; *Ferriss* v. *Eichbaum*, Sup. Ct. Tenn., December term, 1874.

The title to trust property vesting in the trustee, it is obvious that there must be a resignation or removal of the trustee who refuses to qualify, before a new one can be appointed. Section 1977 gives the county court jurisdiction to make the appointment, upon the application of any person interested in the trust, but the mode of making the application is reserved for the part of the Code which treats of special actions and proceedings, namely, part 3, title 2,

ch. 16, § 3648, *et seq*. The jurisdiction to accept the resignation of trustees, and to remove and appoint them, is conferred upon the chancery, circuit, and county courts of the county or district in which the trustee or beneficiary, or some one of them, resides, or in which some portion of the trust property is found, etc. The proceeding may be summary, and by motion, if the necessary parties are before the court. Code, §§ 3650, 3655. Except, it seems, where the trustee has died. *Williams* v. *Neil*, 4 Heisk. 283. Or by petition and notice. Secs. 3656, 3663; *Maxwell* v. *Finnie*, 6 Coldw. 434. The trustee is, of course, a necessary party, and his heirs, if he be dead. *Watkins* v. *Specht*, 7 Coldw. 585. Any one of the beneficiaries may make the application, for such is the express language of the statute. Code, § 3656. The question still remains, whether the other beneficiaries and the maker of the deed are necessary parties to the application.

Upon principle, in the absence of authority, I should consider it very clear that the proceeding, which contemplates, if necessary, the making of defence, the taking of accounts, and the divesting and vesting of title, was in the nature of a litigation, and all parties in interest should be before the court, subject, of course, to the qualification, well recognized in equity practice, that where the parties are numerous, or have the same beneficial interest, the application might be in the name of one or more, for him or themselves and all others. Perry on Trusts, § 885, and cases cited. In that view the application in this case, which was made by the principal beneficiary, might be considered as made for herself and all other beneficiaries, and the sole object being the appointment of a new trustee in place of one who had never undertaken the trust, and refused to execute it, and where, consequently, no accounts were necessary, the summary mode adopted, the trustee being before the court, would be good. This conclusion seems to be sound, unless the maker of the deed occupies such a position as to make him a necessary party. And this may depend upon his being a

beneficiary at all, or occupying a different *status* from other beneficiaries.

Upon this point we have two decisions. of our supreme court directly in conflict, so far as I can see. In *Maxwell* v. *Finnie*, 6 Coldw. 434, it was held that the maker of a deed of trust was a necessary party to a petition for the removal of the original trustee and the appointment of his successor, the application being by one of the beneficiaries, and the other, with the trustee, being a party defendant. On the other hand, in *Thompson* v. *Childress*, December term, 1874, at Nashville, where the application was made by the maker of the deed " on his own behalf, as well as on behalf of all beneficiaries under the deed of trust," the supreme court said that the maker could in no fair sense be held to be one of the beneficiaries, and that the proceeding was void. No reference is made to the previous decision. In neither of these cases does it appear from the opinion that the deed of trust expressly directed the surplus, after paying the trust debts, to be paid to the maker. I know, judicially, the case having been decided by me in the chancery court, that in *Thompson* v. *Childress* the deed contained no such provision. It is probable that the same was true of the deed in *Maxwell* v. *Finnie*, for the court in that case lay stress upon the fact that a part of the debt secured by the deed had been paid by the maker, the idea being that such payment raised a presumption of interest in favor of the maker. A resort to such presumption would have been unnecessary if the deed had given him an interest by stipulating that the surplus should be paid to the maker. The absence or presence of such a stipulation strikes me as a material element in the problem. Without it, although the maker may be entitled to the surplus, it is not by the terms of the deed, but by a resulting trust or debt created by receipt of the money, and, in such case, the maker " can in no fair sense be held to be one of the beneficiaries under the deed." *Hobart* v. *Andrews*, 21 Pick. 532. If, however, the deed itself gives him the surplus, it seems to

me he is actually a beneficiary under the deed, and so it has been held. *Houghton* v. *Davis*, 23 Me. 28.

No such distinction is, however, taken in *Thompson* v. *Childress*, and there is, moreover, a very strong intimation in that case that the application may, under the statute, be made by one beneficiary for himself and all others, drawing, also, no distinction between classes of beneficiaries, although there were preferred classes in the deed.   Under these circumstances my duty is to follow the latest light, and hold the appointment good.

The result is that the complainant fails upon both points. But the defendants concede that the complainant is entitled to the credits shown by the proof, and, consequently, to a decree, to which the court will add the costs of the case.