Nelson, J.,
delivered the opinion of the Court.
On the 17th of May, 1859, Thomas J. Smith had a personal rencontre with A. P. Hunt, in the course of which he inflicted such personal injuries that he was apprehensive they would result in the death of Hunt; and in consequence of his fears of a criminal prosecution, and an action for damages, he determined to leave the country and not undergo a trial in a court of justice. Before leaving the country, he executed two deeds of trust to William D. Smith, each bearing date 18th May, 1859. In the first of said deeds, he conveyed six slaves, in trust, to secure the payment of a bill of exchange, for §1,500, indorsed by W. *347 D. Smith; a note of §2,000, due said Smith; a note for §500, due to Jordan Stokes; and various other debts, specially mentioned, with power to the trustee, if the debts, by note and account, were not paid within twelve months from the date of said deed, to sell the slaves, at public or private sale, for cash or on time, as he might deem best in the exercise of a sound discretion.; and to apply the proceeds to the payment of the debts, in the order mentioned in the deed. It is further provided in said deed that, “if, after the payment of the debts herein specified, any of the proceeds shall remain in his (the trustee’s) hands, they shall be applied to all such debts as I owe; and the balance, if any there remain; to lie in his hands, subject to my order.”
In the second deed, the said bargainor conveyed to the trustee, twelve negroes and the 'tract of land upon which he then lived, about three miles from Lebanon, and “all his stock of all kinds, household furniture, etc.” The trusts declared in said last named deed, are as follows “The condition of the above conveyance is such, that whereas, I am still indebted to Smith and Lester, for said land, and am considerably indebted to other persons, and am desirous of securing them; and whereas, I have executed to said William D. Smith' another deed of trust, of this date, to other property; and, as such property may not be sufficient to secure all of my indorsers and creditors, I have this day, also,. made the above conveyance, in trust, to my said trustee, for the purpose of securing all of my creditors and indorsers; and if my debts are not paid and satisfied at the expiration of twelve months from this date, then my said trustee is authorized to sell so much, *348 or all, of said land and negroes, stock, etc., as may be necessary to settle all my debts; and tbe balance, if there be any property or proceeds of sale, I now, by these presents, give, in consideration of the natural love and affection I bear for her, to my beloved wife, Elmira Jane Smith, to her own proper use and behoof; to be left, however, in the hands of said William D. Smith, as her trustee; and by these presents, to carry out the above gift to my said wife, I convey and transfer, to said William D. Smith, all legal title in and to such property, as may be left after the purposes of this deed of trust, as to my indebtedness, are fully executed.”
The deed first named was duly registered in the Register's Office of Wilson County, on the 19th May, 1859, and the second deed on the 20th of the same month.
After the execution of the deeds, and at some time, not definitely shown, during the year 1860, T. J. Smith purchased of complainant “a lot of mules,” for which he executed two notes, not exhibited in the record: the one for $1,200, and the other for $500. On the larger note, complainant obtained judgment against said Smith, and against the administrator of Bennet, who was Smith’s security, for $1,531.50, at the September Term, 1865, of the Circuit Court of Wilson County, upon which it is alleged, in the bill, that execution was issued and .returned “no property found;” though no copy of this proceeding is exhibited. He also alleges that he recovered judgment before a Justice, against Smith, and Tarver, his security upon the note for $500, upon which, it is alleged, execution was also issued, and a similar return made.
This bill was filed on the 13th December, 1865, against *349 the proper parties, to hold the executrix of the trustee liable for his alleged neglect in not selling said slaves, and for the purpose of causing said deeds to be annulled for fraud, and of obtaining satisfaction of said judgments by a sale of such of said property as still remained on hand.
On the 9th April, 1866, Mrs. S. C. Smith and P. S. Lester filed their answer and cross bill, in which they alleged that they were the owners of said tract of land, and had sold the same to T. J. Smith, to whom they executed a title bond for the conveyance of said land, on the payment of his note for $4,680.30, dated 14th September,. 1858, and due 1st January, 1859, for the purchase money. They admit that this note was credited 3d January, 1859, with $1,500, and with $1,200 on the 1st March, 1863. The said Sarah C. Smith is the widow and executrix of W. D. Smith, the trustee, who died within a few months after the execution of said deeds; and she claims that she found other evidences of debt, among her husband’s papers, against T. J. Smith, to the amount of $2,385.08, which are to be credited with certain sums not specified. It is alleged in said answer and cross bill, by the said Sarah C., that her co-defendant, Thomas J. Smith, paid the said sum of $1,200 in Confederate “money;” that she refused to take it, but he prevailed on her to receive it. She chai’ges that he said, on the next morning afterwards, that he would take the Confederate money back, but when she sent it, on the succeeding day, he refused to do so.
Time was extended to Thomas J. Smith and wife, and they filed their answer and cross bill on the 11th April, 1866, the details of which it is unnecessary here to state.
It has been strenuously insisted for Nance, the com *350 plainant in the original bill, that the deeds of trust were executed for the avowed purpose of evading the laws, and of defeating any recovery that Hunt might obtain in damages; that Hunt, having brought suit, just before the execution of the deeds, was, in law, a creditor; that the deed was fraudulent as to him, and being fraudulent as to existing, was fraudulent and void as to subsequent creditors. Among other things, the provision in the second deed, in favor of the bargainor’s wife; the declarations of the bargainor and trustee, made after the execution of the deed, to the effect that T. J. Smith was still the owner of the property, and that its only object was to defeat Hunt’s recovery; the credit extended upon the faith of Smith’s continued possession and ownership, are relied upon as furnishing the most conclusive evidence of the fraudulent character of the deeds. ' We are satisfied, however, from various facts and circumstances disclosed in the record, that the deeds can not be invalidated for any of the reasons alleged in the bill, or urged in argument.
1. Assuming that Hunt, the plaintiff in the suit for damages, should be regax-ded as a “creditor” within the meaning of the law, as expounded in Farnsworth v. Bell, and Patrick v. Ford, 5 Sneed, 531, 537, we hold that, as a creditor, he was expressly embraced within the provisions of the second deed of trust, in which it is twice declared that it is executed for the purpose of securing all the creditors and indorsers. And even upon the assumption, whieh is not made out by the proof, that it was declared, at the time of the execution of the deed, both by the bargainor and trustee, that their object was to defeat the recovery of Hunt; and supposing they were igno *351 rant that the word “creditors” would include him, we declare the law to be, that such parol declarations could not control the positive and unmistakable provisions of the deed, and that if Hunt had obtained judgment, they could not have alleged their own turpitude of intention to show that he was not one of the creditors whom they designed to secure. But in this case, a strong and irresistible presumption, in favor of the fairness of the deed, is raised by the facts that the suit with Hunt was afterwards compromised, and his damages discharged; and that, by means of the private sale of part of the negroes, all the other debts were satisfied except those due to W. D. Smith, the trustee, and Jordan Stokes, one of the creditors, who appear to have been satisfied with the provisions in their favor, and to have taken no active measures to enforce a sale of the trust property.
2. It is now a firmly established principle of equity jurisprudence, that “a voluntary conveyance, made by a person not indebted at the time, in favor of his wife or children, cannot be impeached by subsequent creditors upon the mere ground of its being voluntary.” See 1 Story’s Eq. Jur., § 362; Sexton v. Wheaton, 8 Wheat, 229; Hord’s lessee v. Longworth, 11 Wheat., 199; Nicholas vs. Ward, 1 Head, 323; Martin v. Oliver, 9 Hum., 561. The adaptation of this principle to the case at bar is not difficult. Here the bargainor conveyed all his property for the benefit of all -his creditors, and settled the surplus, if any, after the satisfaction of their demands, to the separate use of his wife. This was perfectly lawful, according to Hester v. Wilkinson, 6 Hum., 217. It is a *352 favored doctrine in equity, that, creditors out of tbe' way, a conveyance by a husband or father for the support of a wife or child, is founded on a meritorious consideration; and in this case, as all the creditors were provided for, the effect is the same as if there were none. In some respects, the wife is considered, by virtue of the marriage, as the creditor of the husband; and, by express statutory enactment, her claim to dower is preferred to that of his mortgagee or trustee, before foreclosure or sale. Code, 2900. How, then, can a post-nuptial settlement, in her favor, be avoided by one who was not a creditor at the time, and who, as in this case, was charged with notice of the settlement, by the registration of the deeds, before he became a creditor?
The case of Martin v. Oliver, 9 Hum., 561, was, in one aspect, stronger than this; for there, a reversionary interest was reserved to the'.husband in the deed he executed. In that case, it was held that “the deed, being required to be registered, is constructive notice to all persons of its existence. Those who deal with the husband, after the execution of the deed, have the means of acquiring full knowledge, at their peril, of the true condition and title of the property of which he may be the ostensible owner and if they trust him upon the faith of such visible ownership, it is the fault of their own indiscretion and want of vigilance but they can not, in any proper sense of the term, be said to have been defrauded.” Ibid, 565.
However reprehensible it may have been in the husband to become a fugitive from justice, or however well *353 or ill founded may have been bis fears of a criminal prosecution, it was certainly a duty of the strongest legal and moral obligation, on his part, to provide for the wife from whom his misfortune was about to separate him; and, instead of his deeds being fraudulent, they were, in the highest degree, commendable. If the cause of the husband’s absence resulted more favorably than he anticipated, no court of equity would compel the wife, or her trustee, to re-convey to the' husband. The title to the residue of property, or the surplus proceeds of its sale, is absolutely vested to the sole, separate and exclusive use of the wife, and neither he, nor any of his subsequent creditors, can cause it to be divested.
3. The declarations of T. J. Smith and "W. D. Smith, made after the execution of the deeds of trust, to the effect that he was as solvent as he ever had been; that the conveyances were executed for the purpose of avoiding the payment of any damages to Hunt, and that he could pay his debts, and be worth twenty thousand dollars besides, were properly objected to, and were inadmissible as evidence. The rights of Mrs. Smith and the other beneficiaries in the trust deeds, who had no knowledge of such declarations, and no agency in causing them to be made, could not be thereby prejudiced or destroyed. See 6 Hum., 514; 3 Head, 334. But it is useless to cite authorities or review our own cases on this question, as we hold that the deed was made bona fide, and that the possession afterwards was in accordance with it. It is difficult to conceive how such declarations, if they were even admissible in this case, could have exerted any influence upon the mind of complainant, as it is manifest, from the *354 fact that he required T. J. Smith to give personal security, that he did not place much reliance upon them.
4. The deeds of trust are not void because the trustee failed to execute bond and make affidavit, as required by the Code, 1974. That section re-enacts, with slight alterations, sections 9 and 10 of the Act of 1856, chap. 113, Acts 1855-6, pp. 124, 125, which was expounded by this Court in Mills v. Haines, 3 Head, 334, 335. It was there held that the failure of the trustee to comply with the requirements of the statute, furnishes a sufficient reason for displacing him and appointing another in his stead; but in the absence of fraud on the part of the beneficiaries, the legal operation and validity of the trust would not be impaired for that reason; and we adhere to and approve the construction thus given.
5. Although the title papers are not contained in the record, it is admitted in the pleadings that there is a balance of purchase money due for the land, and the vendor’s lien will be declared and enforced by a proper decree; but the sum of twelve hundred dollars, paid upon that debt in Confederate money, and credited upon the note, will remain as a credit. It is not alleged in the answer and cross bill, that there was any compulsion ox-duress in this transaction, and it is shown by the proof that Mrs. S. C. Smith acted freely and voluntarily in receiving the money. The contract was fully executed before the alleged proxnise, next morning, “to take the money back;” and if that promise were fully proven, as it is not, it was made without consideration, and can not be enforced.
6. No other debts will be provided for, in the sale *355 of the trust property, except such as existed at the date of the trust deeds, or were embraced in the terms of the trust. Subsequent creditors will not be let in to share the fund.
Affirm the Chancellor’s decree, with costs.