## J. N. GREGORY v. CHAS. C. GUINN.

Eastern Section.   May 22, 1926.

No petition for Certiorari was filed.

1. **Appeal and error. Only depositions and exhibits appearing in the record as properly filed in the cause will be considered upon appeal.**
   All depositions and exhibits appearing in the record as properly filed in the cause will be presumed to have been read and are a part of the record of an equity case on appeal, but deeds and records in other causes

offered as evidence on the hearing below, though copied into the transcript, in the absence of a bill of exceptions, decree or other sufficient action to indicate that they were so accepted, by the lower court, can not be considered by the Appellate Court.

2. **Appeal and error. Record of another case held improperly included in the record.**

Where the record of another case was included in the record without any showing that it was read or used in the hearing before the Chancellor below, held that it was improperly placed in the record.

3. **Trusts. Resulting Trusts. Evidence held not sufficient.**

Where a party borrowed money and took title in himself with no understanding that the lender was to have an interest in the land and no fraud or deceit was practiced held there can be no resulting trust.

4. **Fraudulent conveyances. Party receiving property must have knowledge of the fraudulent purpose.**

There is authority to the effect that a voluntary conveyance made by a debtor with actual intent to defraud either existing or subsequent creditors is void as to the creditors to whom the fraudulent intent exists but the weight of authority seems to be that in a fraudulent conveyance to defeat creditors, the conveyee or party secured by the fraudulent conveyance must have knowledge of the purpose and participate in the fraudulent design.

5. **Fraudulent conveyances. Pleading. Bill held sufficient.**

In an action to set aside a conveyance as fraudulent held it is not essential that the bill charge in express terms that the party receiving the property knew that the party conveying owed the complainant.

6. **Fraudulent conveyances. Evidence. Burden of showing fraud.**

Where the parties are close kin and fraud is charged the burden is on the parties to show that they are free from fraud.

7. **Fraudulent conveyances. Creditor taking a mortgage for more than his debt to defraud other creditor loses his own security.**

In an action to set aside certain deeds where it was shown that one of the parties took a deed of trust in a larger amount than his own debt, held that the party might take a mortgage to secure his own debt if valid and subsisting, and if he could get it, notwithstanding, that he might know that the willingness to secure him was induced by a desire to defeat other creditors if the mortgage was taken to secure the debt alone, but when it was taken in a greater amount the creditor then became a party to the fraud and the whole transaction became fraudulent.

Appeal in Error from Chancery Court, Polk County; Hon. T. L. Stewart, Chancellor.

Affirmed.

B. B. C. Witt & Son, of Benton, for appellant.

Johnson & Cox, of Knoxville, and John S. Shamblin, of Benton, for appellee.

SNODGRASS, J. This is an attachment and injunction bill, filed by the complainant against J. M. Guinn and Lucy M. Guinn, his wife, and Chas. C. Guinn, a brother of the first mentioned defendant. The object of the bill was to collect a judgment which complainant had obtained before a justice of the peace for the sum of $689.99 and

interest against the defendant J. M. Guinn, to attach certain property of the said J. M. Guinn alleged to have been fraudulently caused to be conveyed to the defendant Lucy Guinn, but purchased with proceeds of defendant Guinn's property, certain real estate in town, and thus covered to prevent its being reached by creditors, and also to attach another piece of real estate alleged to have been fraudulently conveyed by the said J. M. Guinn to his brother, the defendant Chas. C. Guinn, on the 9th day of August, 1924, by a certain trust deed, which the bill attacks as having been made and executed to hinder and delay and defeat the complainant in the collection of his debt, and also attacking the genuineness of the alleged debt of $643 which the deed purported to secure. One object of the bill was to set up an alleged resulting trust in the property described in the trust deed. It was insisted that the said J. M. Guinn had used the money out of which said indebtedness to the complainant arose to purchase the property. But the Chancellor held, and properly so, that Guinn had paid for the property with money borrowed from B. P. Rollins, in which transaction complainant had simply become his security to Rollins, without any agreement or understanding that he was to have any interest in the property, and without any fraud, and that, therefore, the situation involved no case of a resulting trust. However, the indebtedness arose this way: Rollins sued Guinn and the complainant on the note. Complainant paid the matter off and took judgment over. Plea and demurrers were filed to the bill. The demurrers were overruled, but allowed to be relied on at the hearing. Answers were filed putting in issue every allegation of fraud. Proof was taken and the cause came on to be heard before the Chancellor upon the whole record, who on the 24th day of September, 1925, entered the following decree:

"This cause came on to be heard and determined before the Honorable T. L. Stewart, Chancellor at Chambers, in pursuance to an order made at the last term, and by agreement of solicitors, upon the bill, the answers of defendants, the proofs and exhibits and the whole record including the briefs and arguments of solicitors and from all of which it appears to the court that defendant J. M. Guinn, purchased at chancery sale certain lands described in the bill and in the cause of Peoples Bank et al. v. J. W. Pell et al., in January, 1924, paying one-third the purchase price down in cash which he borrowed upon a promissory note of $666.66, from B. P. Rollins, on the date of the purchase, and secured by complainant J. N. Gregory. Thereafter in August, 1924, complainant notified Rollins that he would 'stand no longer as security' and Rollins sued on the note resulting in complainant having the note to pay. This money paid by complainant went directly into the land, but it appears that

Guinn purchased this land for himself and executed his notes for the balance of the purchase money, but that there was no agreement between complainant and J. M. Guinn for the title to be taken in complainant or that complainant should have any interest in the land and no fraud or deceit is shown so that J. M. Guinn, became the owner of an equitable interest in said land, which complainant fixed a lien on by attachment, but the court is of opinion that such transaction between complainant and defendant J. M. Guinn, which money complainant was forced to pay was that of principal and surety only and created no 'resulting trust' in favor of the complainant in the land, and this contention of complainant is overruled and disallowed, to which action complainant excepts.

"The defendant J. M. Guinn on the day Rollins told him that complainant had notified him that he would not stand as security any longer on the said note, said to Rollins that he was not going to pay anything that Gregory was on for him,' and on the following day, August 9, 1924, executed the deed of trust or mortgage sought to be set aside as fraudulent in this cause to his brother, Chas. C. Guinn, one of the defendants. So far as the proof shows the mortgage sought to be set aside conveyed all the property defendant J. M. Guinn had, and reduced him to insolvency, and beyond any doubt it was his intention to hinder, delay and defraud complainant in the collection of this debt. The mortgage was made by J. M. Guinn with the intention of J. M. Guinn not to pay anything that Gregory was on for him, and the fact that it was done the day after notice, and made to secure his brother and none other and for only thirty days and the equities of complainant and circumstances of suspicion, is enough to place the burden of proof on Chas. C. Guinn to show that he knew nothing of the debt or fraudulent intent, which he has failed to show.

"It is therefore ordered, adjudged and decreed by the court, that the defendant J. M. Guinn is justly indebted to complainant J. N. Gregory for the note he had to pay in the sum of $666.66, with interest thereon from the 26 day of January, 1924, making a total of $733.32, and it appearing from the proof and the court so finds that J. M. Guinn, on the 9th day of August, 1924, conveyed all his property to his brother Chas. C. Guinn, by mortgage, to secure him in an amount not then ascertainable, according to the proof, and that Chas. C. Guinn, knew of the insolvency of J. M. Guinn and that he was conveying to him all his property at that time, which was a preference of creditors and known to Chas. C. Guinn, said conveyance is adjudged to be a fraudulent conveyance and made to hinder and delay creditors and especially complainant and the same is therefore decreed to be void and for nothing held and is set aside as to J. M. and Chas. C. Guinn, and the same is so adjudged.

"And it further appearing that complainant has had an attachment levied on the land at the beginning of this suit, and that J. M. Guinn's one-third or equitable interest was attached which fixed his lien, and that since said levy said land has been resold by the Clerk & Master for the unpaid balance on said land for the purchase money and the money is in the hands of the Clerk & Master, and after paying off said purchase money notes the Clerk & Master, will pay over to complainant and his solicitor all of the balance of said money. The defendants J. M. and Chas. C. Guinn, will pay all of the cost of this cause for which execution will issue.

"The bill as to Lucy M. Guinn, and the levy on her land is hereby dismissed, the same being made prior to the conveyance to Chas. C. Guinn, and no judgment is rendered as to Chas. C. Guinn, except for cost, for which execution will issue. In case that an appeal is taken by Chas. C. Guinn, the Clerk & Master at the request of complainant will copy into the record——the decree the Chancellor's notes and findings from which this decree is drawn.

"The demurrers and pleas in abatement filed in this cause, having been heretofore overruled with leave to rely, at the hearing are overruled and disallowed, except as set out and indicated in this decree otherwise.

"To the action and decree of the court in holding the burden of proof to be upon him; in finding the issues in favor of complainant; the exact amount of debt owing him from J. M. Guinn, was not definitely ascertained from the proof and records in the case, when said deed of trust was executed to him; that he had knowledge of fraudulent design of J. M. Guinn in making said conveyance; that the conveyance to him was voluntary and void as to his own interest therein and acts; and finding and adjudging in favor of complainant as against him in all issues in this case, the defendant Chas. C. Guinn excepts, and prays an appeal to the Court of Appeals at Knoxville, which is allowed, and defendant is allowed thirty days from the entry of this decree to give bond for the debt, damages and cost as provided by statute, or otherwise comply with the law."

As will be observed, the defendant Chas. C. Guinn has alone perfected an appeal to this court, and he has assigned errors as follows:

"I. The learned trial court was in error in pronouncing the final decree entered herein in favor of J. N. Gregory and against the defendant; thereby allowing the debt of the complainant priority over the debt and obligation of this defendant against said J. M. Guinn; and in holding that said J. N. Gregory was entitled to priority of payment out of the lands conveyed to this defendant by J. M. Guinn, by trust deed dated on or about the 8th day of August, 1924.

"The learned Chancellor should have adjudged and decreed that this defendant had a prior right to the complainant in

said property, second to only the purchase money notes which were recognized in said mortgage or trust deed; and in failing and refusing so to decree, and in pronouncing judgment against this defendant, and in refusing this defendant such priority, and adjudging costs against him, the learned Chancellor erred.

"II. The learned Chancellor erred in adjudging and decreeing that this defendant, Charles C. Guinn, knew of the insolvency of J. M. Guinn, and that he was conveying to this defendant all his property at that time which was a preference of creditors and known to Charles C. Guinn, and that said conveyance was a fraudulent conveyance and made to hinder and delay creditors and especially complainant, and therefore void; and in setting aside said conveyance from J. M. Guinn to Charles C. Guinn.

"III. The learned Chancellor should have adjudged and decreed that said trust deed and note of Charles C. Guinn was good, valid and binding and that said trust deed or mortgage conveyed in the property covered by it, a right to Charles C. Guinn superior to the right of the complainant Gregory; and in failing and refusing so to do, he was in error.

"IV. Learned Chancellor was in error in adjudging the costs incident to making Lucy M. Guinn and the levy upon her land, which was dismissed against the co-defendant, Charles C. Guinn. There is no proof in the record, nor any intimation that Charles C. Guinn in any way had anything to do with the wrongful bringing of said suit against Lucy M. Guinn; the wrongful suit being brought solely by the complainant, and adjudication of the costs for the wrongs of the complainant in so bringing said suit against this defendant, was erroneous. The learned Chancellor in dismissing the bill as to Lucy M. Guinn, should have adjudicated the costs for such wrongful joinder against the complainant who brought the suit.

"V. Neither the final decree nor the Chancellor's notes and findings from which the decree is drawn are sustained by the evidence in this case, and said judgment and decree are erroneous.

"VI. There was no allegation in the bill that this defendant, Charles C. Guinn, knew that J. M. Guinn owed the complainant Gregory; and this defendant's demurrer to the bill should have been sustained.

"VII. The bill shows upon its face that the land in the deed of trust was worth three thousand dollars, enough to sat·

isfy the court levy first, the deed of trust second and the complainant's debt third, and then have money left over; and the court should have sustained the demurrer raising this point."

Another question is raised, as to the transcript, by a motion of complainant to strike from the record, as improperly copied therein, certain portions of the original record in the case of the Peoples Bank v. J. W. Pell et al., because in fact none of the record in the case of the Peoples Bank v. J. W. Pell et al., was read or before the Chancellor when this case was tried, and that it could have but one effect—that it is to show that the Chancellor made an erroneous finding of facts—for which reason it was moved to strike and expunge this matter, and all matters belonging to Peoples Bank v. J. W. Pell et al., from the record.

An examination of the record reveals that portions of the original record in a case of Peoples Bank v. J. W. Pell et al., appear as a part of the transcript, and it does not appear to be properly a part, and the motion is sustained. Shannon's Code, section 4836, provides:

"In equity causes removed to the Supreme Court by writ of error, or appeal in the nature of a writ of error the depositions and exhibits read on the hearing below shall be considered a part of the record, and the cause shall be reviewed and examined as if brought up by appeal."

Therefore all depositions and exhibits thereto appearing in the record as properly filed in the cause will be presumed to have been read, and are a part of the record. But "deeds and records in other causes, used as evidence on the hearing of a chancery cause, cannot, under this section, be considered by the Supreme Court, though copied into the transcript, in the absence of a bill of exceptions, decree or other sufficient action to indicate that they were so used in the lower court. Shelby Co. v. Bickford, 18 Pickle, 395-404-406.

There is no such sufficient indication in the record to show that this original record was read as evidence. It is true that the record was referred to in the pleadings and testified as to in the proof, but the record itself was not made exhibit to the pleadings, nor in the proof does it appear as exhibit to any testimony.

The affidavit filed by the Clerk & Master in relation thereto tends to reflect seriously upon the attorney responsible for its inclusion in the record, but under the circumstances we have seen proper to regard the explanation furnished by his affidavit as sufficiently rebutting any moral or professional delinquency, and attribute the appearance of this foreign matter in the record as due to an excusable mistake. However, in the view we have taken of the case, the striking of this matter is not very material, as with the exception perhaps of the exact pro rata the said Chas. C. Guinn received on the $1000

note, which he said formed the endorsement obligation of his brother to him, matters appearing by the stricken record appear otherwise sufficiently in the proof.

The Chancellor's finding of fact, with which we concur, is as follows:

"Complainant insists that he has a 'resulting trust' in the land described in the bill.

"The facts as shown by the proof are, that J. M. Guinn, one of the defendants purchased the land at C. & M. sale and that he was required to pay one-third of the purchase price, to-wit, $666.66 in cash; that he borrowed this sum from one Rollins, on the day he purchased the land, and that the complainant signed the note for said money payable to said Rollins, as surety for Guinn, and that Guinn paid the money to the C. & M. as cash payment on said land.

"Thereafter, in August, 1924, complainant notified Rollins, the holder of the note, that he would 'stand' no longer as surety, and Rollins sued on the note, which resulted in complainants having the note to pay.

"I do not think the facts constitute a resulting trust. While the proof shows that the money borrowed by J. M. Guinn was paid to the C. & M. as the cash payment on the land, it also appears from the proof that Guinn bought the land for himself, and there was no agreement or understanding that complainant was to have any interest in the land, and no deceit, fraud or wrongdoing on the part of J. M. Guinn in taking the title to himself is shown.

"Think the proof presents a cause where party complainant simply secured a note for defendant J. M. Guinn, and was forced under the facts in this cause to pay the same as such security.

"The proof further shows that defendant J. M. Guinn, on the day that Rollins told him that complainant had notified he would not stand longer for the note, said to Rollins that 'he was not going to pay anything that Gregory was on for him.' This was on August 8, 1924, so the proof shows.

"On the next day, August 9th, J. M. Guinn executed the deed of trust or mortgage sought to be set aside, to his brother, Chas. C. Guinn, one of the defendants.

"So far as the proof shows the mortgage conveyed all the property the defendant J. M. Guinn had, and rendered him to insolvency, if in fact he was not already insolvent.

"There can be no doubt from the record that it was the purpose and intention of J. M. Guinn to hinder and delay and I think to defeat complainant in the collection of his debt.

"The. conveyance was made not only with the expressed intention of J. M. Guinn not to pay anything Gregory was on for him, but with the knowledge that he was about to be sued on the note which Gregory had secured for him.

"Did defendant Chas. C. Guinn have knowledge of J. M. Guinn's fraudulent purposes, or was such knowledge imputed to him?

"There is authority to the effect that a voluntary conveyance made by a debtor, with actual intent to defraud either existing or subsequent creditors, is void as to the creditors to whom the fraudulent intent exists.

"Churchhill v. Wells, 7 Cold., 364, but the weight of authority seems to be that in a fraudulent conveyance to defeat creditors, the conveyee or party secured by the fraudulent conveyance had knowledge of the purpose and participated in the fraudulent design. 8 Bax., 190; 9 Yerg., 325; 3 Head., 322; 7 Cold., 375; 2 Heisk., 353.

"We start out with the fact that Chas. C. Guinn was a brother of J. M. Guinn, which is suspicious.

" 'A father may undoubtedly accept a conveyance from his son, but when the deed is challenged by a party having a strong equity and when there are a few circumstances of suspicion, the burden is on the grantee to show that the contract was made in good faith, and that the transaction was not tainted with fraud.' Taylor v. Taylor, 6 Higgins, 373, citing Robinson v. Frankel, 85 Tenn., 475, which is a well-considered case.

"The proof is to the effect that J. M. Guinn executed the mortgage to his brother on the 9th of August, the day following the notice by Gregory, for an amount approximated (exact amount not then ascertainable), as balance on a note which J. M. had sold his brother Chas. C. and which was in process of collection, and also for $100 attorney fee which he is alleged to have owed the said C. C. Guinn. There is no statement filed of these services, or their correctness verified except by the proof of defendant C. C. Guinn, which is not denied in the proof.

"J. M. Guinn does not testify. Chas. C. Guinn says he does not know for certain what caused J. M. Guinn to execute the deed of trust at the time. He says it was not for the purpose of defrauding complainant, which is a conclusion in the form it is asked and answered.

"He says that he had heard J. M. was owing complainant some money, never heard the exact amount and that he never thought about the conveyance making it hard for J. M. to pay his other debts, that he was trying to get what was justly owing to him.

"He testifies that he does not remember whether Rollins talked to him about J. M. debt nor does he remember whether he had ever heard before the trust deed was executed that complainant had directed Rollins to sue on the J. M. note.

"The testimony of this defendant upon the most vital issue is unsatisfactory since I am of the opinion that under the circumstances shown and the rule as I interpret it he must show good faith in this transaction.

"It is clearly inferable from the proof that he knew of his brother's indebtedness to insolvency and failing financial condition, and that the property conveyed was all that he had.

"He does not show that he did not know of J. M. Guinn's declaration to pay the debt neither in the answer nor the proof is knowledge of the purpose sufficiently denied.

"From the record the court is of opinion that said conveyance is fraudulent and should be set aside as to complainant.

"The court is of opinion that under authority Bryson v. Hogel, 6 Heisk., 139, as well as under statute complainant may maintain this suit.

"The fund in hands of C. & M. after satisfying lien on the land will be paid to complainant.

"He will have judgment here for balance due him if any.

"Defendants will pay cost.

"Appeal will be granted and thirty days from filing of decree allowed in which to execute—

"So decrees and forward for approval and entry."

From the foregoing the only question in the case that could be considered as involved in any doubt, is as to whether or not the said Chas. C. Guinn participated in the fraudulent purpose of his brother to remove beyond reach of the particular creditor, the complainant, the only asset he possessed apparently available for the satisfaction of complainant's debt. It was not essential that the bill charge in express terms that Chas. C. Guinn knew that J. M. Guinn owed the complainant Gregory, as contended by the 6th assignment of error. The bill sufficiently alleged his participation in the fraud, which implied such an allegation. The demurrer, therefore, was properly overruled, and so is said 6th assignment of error.

Nor was it material that the bill may have shown the land sought to be subjected as worth $3000, an amount even sufficient to have paid the debt of complainant, defendant Guinn and even, if necessary, the amount for which a lien was retained against it-in the cause of Peoples Bank v. Pell et al., referred to. Complainant had the right to abandon his levy in the circuit court and to free the asset, if he could do so, from any fraudulent claim of the defendant, and therefore the 7th assignment that the demurrer, virtually

insisting that he should have pursued his remedy in the circuit court, and have sold the property subject to defendant's mortgage, should have been sustained, is likewise untenable, and the 7th assignment is overruled.

The Chancellor, however, we do not think should have taxed any cost incident to making Lucy Guinn a party, as to whom the bill was dismissed, and to this extent he was in error, and to this extent the 4th assignment is sustained.

All the other assignments of error are dependent upon the question as to whether or not appellant Chas. C. Guinn participated in the fraud, so as to set aside the deed or mortgage to him and make the attachment issued and levied in the cause superior to his claim thereunder.

We think the Chancellor's finding that he participated in the purpose of his brother was justified from the circumstances. In the first place, there was the relationship. They were brothers. J. M. Guinn, according to Chas. C. Guinn, was, or had been, his client, and owed him a lawyer's fee, which he claims constituted a part of the settlement note secured by the trust deed attacked. Chas. C. had bought the interest of J. M. in his father's estate at $1800, and had executed three notes of $600, each, dated January 11, 1922, one due in two months, one in one year and one in two years, the last of which he claims to have paid off about the 5th of January, 1924. He was asked why he paid this last note while there was an obligation due him from his brother, and stated that he had to pay it to the bank, where it had been pledged. Regarding this alleged endorsement obligation, it appears from the answer and proof that Chas. C. Guinn owned a $1000 note which had, among others, been given by J. W. Pell to J. M. Guinn in the purchase of lands, a part of which, at least, was attached in this cause; that this note had been endorsed to him by J. M. Guinn. Enough is shown to know that this note was involved in the foreclosure in the case of the Peoples Bank v. J. W. Pell et al., and that J. M. Guinn bought back in this case at least a part of the land for $2000 that he had sold to Pell, and that there should not have been much more than two years interest on the $1000 note owned by Chas. C. Guinn, or $120, making about the time this trust deed was executed the sum of about $1120. Chas. C. admits that the foreclosure netted him $745. So that, even if a valid endorsement obligation existed to him at that time from J. M. by reason of said note, it and the $100 lawyer's fee charged did not amount to the sum of six hundred and forty-three dollars, although the answer seeks to build to this sum by reason of other alleged interest payments not previously chargeable to any supposed endorsement obligation.

If the stricken proceedings could have been looked to, they would have shown that the principal and interest due on that note to January 1, 1924, when the decree was taken, the sum of $1169, and that the sale was made of the land on January 26, 1924, for $2000; that there was paid by J. M. Guinn on the sale the sum of $666.66 cash and two notes executed, one due in six months from date for the sum of $666.67, and one in eighteen months from date in the sum of $666.66, and that from this fund the note held by Guinn was entitled to a pro rata of $745, leaving a balance of $424. The first of these notes had become due and was doubtless paid in in July, 1924, before the trust deed was executed in August, and the other note would not have been due until thereafter, for which Pell's obligation, though claimed to be insolvent, was still outstanding.

It thus appears that the note of $643 represents more than was legally due, if anything was due, and the deed having been executed the 9th of August, 1924, after notice had been given Rollins to sue on the 7th or 8th of August, and the statement of J. M. Guinn that he would not pay anything for which complainant was standing, is too opportune a coincidence to be dismissed with explanations that do not explain sufficiently, and as to obligations originally conditional in character. The obligation of an endorser is sometimes made to depend upon demand, notice and protest, and while it is true that these questions are matters of defense, and might be waived, yet the circumstances of their waiver or non-waiver are material in determining the question of the bona fides of the transaction, and whether or not the endorsement on the note was a present, living obligation, or whether or not it was a liability revived and created for the purposes of the occasion. In regard thereto Chas. C. Guinn testified:

"Q. Please tell what you know about the deed of trust made Exhibit B to your answer, what it is given for, and whether the indebtedness it secures has been paid." A. It was executed as it purports on its face, securing the payment of a note made Exhibit C to my answer, none of which has ever been paid. This note was given in settlement of an endorsement obligation which J. M. Guinn owed to me, and for some attorney's fees he owed to me, as set out in my answer."

"Q. Did you buy and pay for the interest of J. M. Guinn in the farm inherited from your father? A. Yes sir, I bought and paid for it, as shown by certified copy of the deed he gave me and the acknowledgment which he caused to be entered upon the Register's books. I make this certified copy Exhibit 'A' to my deposition."

While he does say in explanation of why he did not offset the last note against what his brother owed him on the endorsement, that he had to and did pay it to the bank, where it was pledged, he does

not say how the other note was paid, except that satisfaction was acknowledged and the lien discharged along about January 5, 1924. We think it apparent, therefore, having these dealings with his brother, and being his lawyer, that he knew of his financial situation and that the property he was conveying in the alleged trust deed was all he had, and also that he owed other debts. He was asked:

"Q. Did you know that J. M. Guinn owed J. N. Gregory at that time? A. Not for certain; but had heard that he was owing him some money, I never heard the exact amount."

Asked what caused him to make the deed of trust, he said:

"A. I do not know for certain; but do know that I was about to commence suit against him to collect the note which he had endorsed to me; and he said if I would wait awhile, he would make the deed of trust; that he thought he would be able to sell that land for enough to more than pay all he owed."

Asked if he had heard that Rollins had been notified to sue, he said:

"A. No, not that I remember."

The phrase "not for certain" can cover a great deal that was known for certain, and "not that I remember" can cover a great deal that is but temporarily out of mind. Such answers addressed as to things of recent interest, that ought to be remembered, serve to but deepen suspicion that might justly be entertained. The deposition of J. M. Guinn was not taken, and upon the whole we think the Chancellor was justified, under the circumstances, in concluding that the transaction was designed, at least to some extent, in padding the claim, to aid the said J. M. Guinn in so covering up his property as to partially, at least, defeat the complainant. While the fraudulent purpose of J. M. not participated in by Chas. C. would not be sufficient of itself to set aside the said deed of trust or mortgage, even though it may have been known to the said Chas. C., yet if that purpose and act is participated in directly, even in the slightest degree, it so tinctures it as to make the entire transaction void as against the person affected. Said Chas. C. had the right, in other words, to have taken the mortgage to secure his own debt, if valid and subsisting, and if he could get it, notwithstanding he may have known that the willingness to secure him was superinduced wholly or partially by a desire upon the part of the maker of the deed to defeat the complainant, if upon his part the purpose is alone to secure such bona-fide indebtedness. In that event the indirect aid or participation evidenced only by his acceptance of such security is not an inocculation of the transaction with invalidity. But if the indebtedness secured be more than is legally due, which evidences a purpose to aid in a covering, it is sufficiently vaccinated, and the whole transaction is contaminated. This should have had the fullest explanation, which is lacking.

The remaining assignments of error are overruled and the decree of the Chancellor affirmed, except that complainant and his security will pay all the costs incident to making the defendant Lucy M. Guinn a party, together with one-third the costs accruing in this court; and the defendant Chas. C. Guinn and his security on appeal bond will pay the other two-thirds of the costs accruing in this court. With the exception of the costs adjudged against complainant, the costs below will be paid by the said J. M. and Chas. C. Guinn.

Portrum and Thompson, JJ., concur.